### PEOPLE v. HANNIGAN.

(Supreme Court, Appellate Division, First Department. June 9, 1899.)

1. ASSAULT IN THE SECOND DEGREE—SUFFICIENCY OF EVIDENCE.
   A policeman fired a shot in pursuing a boy who had been playing football on the street. He testified that while running after the boy he drew his revolver to call the attention of another officer, and that he slipped, and it went off. Two witnesses testified that the revolver was fired twice,— once into the air, and again directly in front. There was an abrasion of the flesh about the boy's hip which might have been made by a bullet. *Held* to warrant a conviction of assault in the second degree, within Pen. Code, § 218, defining it as the assaulting of a person by the use of a weapon.

2. SAME—INTENT.
   A policeman who took out his pistol and fired it, with intent to shoot at a boy who had been playing football in the street, is guilty of assault

in the second degree, under Pen. Code, § 218, defining such offense as wrongfully assaulting another by the use of a weapon, though the bullet never struck the boy; and the intent may be inferred from the act of shooting.

Appeal from court of general sessions, New York county.

John J. Hannigan was convicted of assault in the second degree, and he appeals. Affirmed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Louis J. Grant, for appellant.

Charles E. Le Barbier, for the People.

O'BRIEN, J. The defendant, a police officer, was indicted on two counts of assault in the first and second degrees. The indictment charged that the assault was made with a pistol upon one Charles McNally, a boy of 13 years of age, on Thanksgiving Day, November 25, 1897. At the close of the evidence, the jury rendered a verdict of assault in the second degree, with a recommendation to mercy; and the court thereafter sentenced the defendant for a term of two years in the state prison.

The appellant insists that the evidence does not support a conviction for assault in the second degree. In defining this crime, the Penal Code says (section 218):

"A person who [without intent to kill] * * * wilfully and wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon, or * * * wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm, * * * is guilty of assault in the second degree."

Whether the elements essential to constitute such a crime were established is to be ascertained from a review of the evidence, which may be summarized. Charles McNally testified that he lived at 205 East 107th street, between 2d and 3d avenues, and on Thanksgiving morning went into the street with a football, and there began to play with other boys, and that while they were playing two men, one of them the defendant in citizen's clothes, interrupted them, and the boys scattered; that he ran to 2d avenue, then to 106th street, and down to 1st avenue, and stopped on the east side of 1st avenue at 105th street; that he then saw the defendant on the opposite side of the avenue, with a pistol in his hand, and he called out to him to "stand"; that he did not think the defendant would shoot, and started to run down 1st avenue, heard the officer whistle behind him, but did not stop, and, when between 104th and 103d streets, his hat blew off, and he stopped to pick it up, and then "heard the reports and felt a pain in his left hip"; that he stopped running, and the defendant came up to him, saying, "You would not stand," to which he replied, "Well, I am shot now," and the defendant said: "You are not shot; you only fell up against a barrel,"—and that on the way to the station house the defendant told him that, if he would not say anything about the shooting, he would try to speak to the judge in the morning, to which he answered, "All right." The boy was taken to a hospital, but no bullet was found, although there appeared to be

an abrasion of the flesh which might or might not have been made by a bullet. There was testimony to the effect that a bullet fired from the distance proved would have shattered the bone; but it was stated that a deflected bullet might have caused the wound. The boy's clothing was shown, but it was not made clear that the injury done them was the result of a bullet. McNally was not seriously discommoded; for. although he testified that he was confined to the house for some time, he was able to get about. The defendant stated that he followed the boy, but did not have a pistol in his hand at 105th street; that while running between 105th and 104th streets he blew his whistle to call the attention of another officer, and with the same purpose between 104th and 103d streets drew his revolver; that he slipped and the revolver went off, and the boy stopped and told him he thought he was hurt, and he asked him if he had fallen against the wheel of a truck there, and the boy answered that he did not know; and that he had no further conversation with the boy. Eyewitnesses testified that the officer was pursuing the boy down 1st avenue, and that between 104th and 103d streets the boy went around a truck, and the defendant fired his revolver. Two witnesses state that the revolver was fired twice,—once into the air when the defendant was above 104th street, and again directly in front of him. One witness corroborated the boy's statement that the defendant had the revolver in his hand at 105th street. Another witness stated that the defendant's pistol was pointed up in the air, and went off when he slipped. The police captain said that the pistol was given him with five cartridges and one emptly shell. The boy's version is neither as exact nor as well expressed as would be the statement of a more mature person, but it is apparently straightforward and honest, and under a searching cross-examination was unshaken. In many respects it is supported by other evidence. It is not questioned that the shot was fired by the officer. There is a conflict, however, as to when and how many shots were fired and whether the bullet actually struck the boy. This conflict and the inferences as to intent were properly submitted to the jury, who, after hearing the prisoner's version and from all the circumstances, were called upon to say whether or not the defendant was guilty of the assault. The sentence, in view of the facts and the jury's recommendation to mercy, was severe, and, if we had jurisdiction, it would justify a modification of the judgment; but it was within the power of the trial judge to impose it, and is not a subject for our interference. The appeal in that regard must be addressed to the executive. Unless, therefore, errors of law were committed, the verdict and judgment must stand.

The appellant argues that the jury could not convict him for assault in the second degree, unless it was conclusively shown that he actually aimed at the boy; that, if the boy was shot at all, it must have been an accidental injury caused by the bullet striking some object and being deflected; and that there was no intent to do violence. On this point the court correctly charged the jury that "if the defendant took out his pistol, and, with intent to shoot

at McNally, fired that revolver, * * * even though the bullet never struck McNally, the defendant would be guilty of assault in the second degree," and, furthermore, that "intent may be inferred from the act." The various exceptions to the charge are not substantial. The charge was a full one, and correctly stated the principles of law. And, although the judge in instructing the jury refused in certain instances to use the words suggested by the defendant's attorney, embodying a correct statement of the law, he did in more ample language set forth the same principles for application, so as to leave no doubt that the prisoner was not injured by the refusals to charge the specific requests.

The judgment must be affirmed. All concur.